PUBLISH

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 13-cv-01634-REB

DANNY L. PHILLIPS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER REVERSING DISABILITY DECISION
## AND DIRECTING AWARD OF BENEFITS

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed June 21, 2013, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of degenerative disc disease,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

diabetes, hypertension, trigger fingers in both hands, diffuse pain throughout his body, and obesity. After his applications for disability, insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on February 28, 2012. At the time of the hearing, plaintiff was 53 years old. He has a high school education and past relevant work experience as a construction laborer. He has not engaged in substantial gainful activity since October 28, 2008, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff's degenerative disc disease and obesity constituted severe impairments, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Plaintiff's other alleged impairments were found to be non-severe. The ALJ found that plaintiff had the residual functional capacity to perform unskilled light work with a sit/stand option and additional postural restrictions. Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that he could perform. He therefore found plaintiff not disabled at step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both him previous

work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of

>the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[2] *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of

---

[2] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. **Id.**

### III.  LEGAL ANALYSIS

Plaintiff alleges that the ALJ erred, *inter alia*, by rejecting the opinions of both his treating source and the consultative examiner. I concur, and find that these opinions, properly considered and weighted, support a conclusion that plaintiff in fact is disabled. I therefore direct an award of benefits in plaintiff's favor.

Plaintiff has received treatment for a variety of medical complaints at a succession of medical clinics in the Pueblo, Colorado, area since at least 2007. (**See** Tr. 442-544.) His treating physician, Dr. David Krause, submitted an opinion in support of plaintiff's claims for benefits stating that, as a result of Type II diabetes, hypothyroidism, chronic back pain, and degenerative arthritis of the hands, plaintiff could lift less than 10 pounds, sit for no more than 30 to 60 minutes at one time for a total of no more than 2 hours a day, and be on his feet for no more than 30 minutes at a time for no more than 2 hours a day. He further suggested that plaintiff should rarely stoop, squat, or kneel and never crawl, and that he could perform work that required handling and fingering only rarely (i.e., no more than 10 repetitions per day) and reaching no more than one hour per day. (Tr. 580-581.)

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); **see also Watkins v. Barnhart**, 350 F.3d 1297, 1300 (10th Cir. 2003). A

treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. ***Frey***, 816 F.2d at 513.

The ALJ stated that he gave this treating source opinion little weight because Dr. Krause failed to cite any objective medical findings in support of his conclusions and because his conclusions allegedly were inconsistent with his own treatment notes. Neither of these conclusions bears scrutiny. It is true that Dr. Krause's opinion, as such, did not pinpoint the objective medical evidence supporting the limitations he imposed, but the form on which he issued that opinion did not include any inquiry in that regard. Moreover, the Tenth Circuit has made clear that medical opinions may not be disregarded merely because they are expressed on a check-box type form, especially where they have been completed by a treating source. ***See Andersen v. Astrue***, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009); ***Angster v. Astrue***, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010). The ALJ was required to go further to examine the record of Dr. Krause's actual treatment of plaintiff to determine whether the evidence supported the limitations endorsed in his opinion.

Although the ALJ claimed that Dr. Krause's treatment notes did not support the limitations he imposed, he failed to explain that conclusion with specific reference to the evidence. Instead, he cited the entirety of Exhibit 3F, a document comprising more than

6

100 pages of treatment notes. (Tr. 18.)[3]  Just as "[j]udges are not like pigs, hunting for truffles buried in briefs," **Gross v. Burggraf Construction Co.**, 53 F.3d 1531, 1546 (10th Cir. 1995) (citation and internal quotation marks omitted), this court is neither authorized nor inclined to search the administrative record in search of evidence which might lend support to the ALJ's decision.[4]  Lacking an analysis specifically tied to the evidence in the record, the ALJ's determination is merely a conclusion in the guise of a finding, and does not constitute substantial evidence in support of the disability decision. **See Hardman v. Barnhart**, 362 F.3d 676, 679 (10th Cir. 2004).

Moreover, even if Dr. Krause's opinion was not entitled to controlling weight, it still was entitled to deference, and should have "be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996).  **See also Langley v. Barnhart**, 373 F.3d 1116, 1119 (10th Cir. 2004).  Among these considerations is the consistency of the opinion with the other evidence of record.  **See** 20 C.F.R. § 404.1527(c)(2).  In this case, Dr. Krause's opinion is buttressed to a substantial degree by the findings of the consultative

---

[3] Earlier in his opinion, the ALJ had examined some of the medical evidence relevant to Dr. Krause's treatment. (**See** Tr. 16-17.)  However, there is little in this recitation of the evidence that obviously undercuts Dr. Krause's opinion.  For one thing, the evidence relates largely to a period of time prior to plaintiff's alleged date of onset.  Thus, any negative inference the ALJ may have intended to draw from the fact that plaintiff received relief from his symptoms and was able to continue to perform heavy exertion has no bearing on the issue whether he was disabled thereafter.  Moreover, the records cited point to objective medical findings that suggest impairments capable of producing the type of pain plaintiff in fact claimed to experience and do not plainly support a conclusion that treatment was effective to any particular extent.  **See Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing **Luna v. Bowen**, 834 F.2d 161, 163-64 (10th Cir. 1987)).  **See also** 20 C.F.R. § 404.1529(a).

[4] This is now the fourth case in less than two weeks in which the court has reversed a disability decision due to an ALJ's use of such global citations and concomitant failure to link his or her opinion to specific evidence in the administrative record.  **See Russ v. Colvin**, Civil Action No. 13-cv-01319, **Order Reversing Disability Decision and Remanding to Commissioner** at 8 [#22], filed September 15, 2014); **Cira v. Colvin**, 2014 WL 4437285 at *3 (D. Colo. Sept. 9, 2014); **Guttierez v. Colvin**, 2014 WL 4437280 at *4 (D. Colo. Sept. 9, 2014).

examiner, Dr. Ryan Otten. Following his examination, Dr. Otten opined that plaintiff could stand or walk for only two hours a day and would have frequent difficulties with bending, squatting, crouching, and stooping. He further endorsed frequent manipulative difficulties with the upper extremities. He imposed no limitation on the ability to sit, however, and suggested that plaintiff could lift and carry up to 10 pounds frequently and 20 pounds occasionally. (Tr. 552.) The ALJ accepted Dr. Otten's lifting and carrying restrictions, but rejected the remaining restrictions, saying they were unsupported by the results of Dr. Otten's own examination and the other medical evidence of record. (Tr. 18.)

This finding, too, is unsubstantiated and therefore erroneous. Although residual functional capacity is an administrative determination, not a medical one, 20 C.F.R. §§ 404.1546 & 416.946; **Rutledge v. Apfel**, 230 F.3d 1172, 1175 (10th Cir. 2000), the ALJ's determination must be grounded in some medical evidence, **see Anderson v. Shalala**, 51 F.3d 777, 779 (8th Cir. 1995). The ALJ's own lay assessment of the conclusions to be drawn from Dr. Otten's medical examination, however, is not medical evidence, **see Hamlin v. Barnhart**, 365 F.3d 1208, 1221 (10th Cir. 2004), nor does his own disbelief of plaintiff's subjective complaints of pain and limitation provide a basis on which to reject Dr. Otten's medical opinion, **see McGoffin v. Barnhart**, 288 F.3d 1248, 1252 (10th Cir. 2002). Nor did the ALJ specify – even by such a global reference as was used to discredit Dr. Krause's opinion – what other medical evidence of record contradicted Dr. Otten's conclusion. For all these reasons, the ALJ's determination of the weight to be afforded Dr. Otten's opinion is not supportable either.

The ALJ 's errors in this regard are compounded by the fact that it is impossible

to determine precisely what functional limitations he did find supported by the evidence. The ALJ stated only that plaintiff had the capacity for light work, without specifying plaintiff's abilities to lift, carry, sit, stand, or walk.  "Light work" may consist of various different combinations of these vocational requirements, however:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 1567(b).  Indeed, the Commissioner recognizes that expressing residual functional capacity merely by reference to a broad exertional category, as was done here, may lead to errors at steps 4 and 5 of the sequential evaluation process.  She thus requires that residual functional capacity be expressed instead as a function-by-function assessment of the claimant's ability to do work-related activities.  **Social Security Ruling** 96-8p, 1996 WL 372184 at *3-4 (SSA July 2, 1996).

The problems with an assessment which does not follow this guideline is manifest in this case.  Although the ALJ apparently adopted Dr. Otten's lifting and carrying restrictions (*see* Tr. 18), it is not clear how much sitting, standing, and walking he concluded plaintiff was capable of performing.  Both Drs. Krause and Otten stated that plaintiff could stand and walk for no more than two hours in a day, which would be incompatible with most unskilled light work.  *See* **Social Security Ruling** 83-10, 1983 WL 31251 at *5 (SSA 1983) (primary difference between light and sedentary work is that light work typically "requires a good deal of walking or standing" and that

9

"[r]elatively few unskilled light jobs are performed in a seated position"). The ALJ also apparently rejected any limitations on plaintiff's ability to perform tasks requiring pushing or pulling with the upper or lower extremities, although such limitations were endorsed by both Drs. Krause and Otten, and find some support in the record.[5]  *See id.*, 1983 WL 31251 at \*6 (unskilled light jobs typically "require use of arms and hands to grasp and to hold and turn objects").

Moreover, because the ALJ did not include any specific functional parameters in his hypothetical question to the vocational expert (*see* Tr. 37-38), it is not possible to say that plaintiff actually could perform the alternative light jobs the vocational expert identified in response.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.") (citation and internal quotation marks omitted).  The Commissioner therefore has failed to sustain her burden at step 5 of the sequential evaluation as well.

Plaintiff argues that I may direct an award of benefits as of the date he turned 55 in September 2013, since even under the ALJ's determination, a person of that age who is capable of performing only light, unskilled work should be found disabled under the Commissioner's Medical-Vocational Guidelines (the "Grids").[6]  Reliance on the Grids,

---

[5] The opinion of the state agency doctor suggested that plaintiff could sit, stand, and walk for a total of six hours a day and had no push/pull restrictions (Tr. 61), but the ALJ specifically rejected that opinion on the ground that the record supported greater exertional and non-exertional limitations than those endorsed by the examiner (Tr. 18).  Here again, however, the ALJ's failure to specify the precise nature or degree of any such additional functional limitation makes his ultimate determination impossible to review.

[6] The Grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

however, would be inappropriate, since they do not contemplate a sit/stand option in unskilled jobs, such as the ALJ imposed here.  **See Abeyta v. Astrue**, 2011 WL 93721 at *3 (D. Colo. Jan. 10, 2011.  **See also Social Security Ruling** 83-12, 1983 WL 31253 at *4 (SSA 1983) ("Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.").

Nevertheless, I believe that plaintiff is entitled to a directed award of benefits in this case.  The medical opinions of Dr. Krause and Dr. Otten support a conclusion that, at best, plaintiff can perform sedentary work with significant postural and manipulative limitations.  The Commissioner has failed to point to any evidence in the record suggesting that plaintiff is capable of more than this level of work-related functionality.[7] Yet when the ALJ queried the vocational expert as to whether there were any jobs in the national or local economies compatible with such restrictions, her clear answer was that there were not.  (Tr. 39.)  Given this evidence, and in light of plaintiff's age and the length of time his applications have been pending, I find that further remand would serve merely to delay an award of benefits to which plaintiff plainly is entitled.  **See Railey v. Apfel**, 1998 WL 30236 at *4 (10th Cir. Jan. 9, 1998); **Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993); **Emory v. Sullivan**, 936 F.2d 1092, 1095 (10th Cir. 1991); **Adamson v. Astrue**, 2012 WL 4378120 at *4 (D. Colo. Sept. 25, 2012).

### IV.  ORDERS

---

[7] Again, because the ALJ specifically rejected the opinion of the state agency examiner, the Commissioner cannot invoke that opinion in support of the disability determination now.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2.  That judgment **SHALL ENTER** in favor of plaintiff and against the Commissioner;

3.  That the Commissioner is **DIRECTED** to award plaintiff benefits from his alleged date of onset; and

4. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated September 16, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge